No. 48,702

THE STATE OF KANSAS, *Appellee*, v. RICHARD L. DODSON, *Appellant.*

(565 P.2d 291)

Opinion filed June 11, 1977.

*Hugh R. McCullough,* of Topeka, argued the cause, and was on the brief for the appellant.

*Thomas D. Haney,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is a direct appeal by defendant-appellant, Richard L. Dodson, from a conviction of promoting prostitution in violation of K. S. A. 21-3513, a class A misdemeanor. A jury trial was waived and the matter was tried to the district court.

On October 21, 1975, Reserve Police Officers J. Douglas Mauck and Jack C. Metz were assigned to Detectives Hogan and Killian of the Topeka Police Department's vice squad for the purpose of participating in a prostitution investigation. Mauck and Metz met at the police station where they were told by the detectives that the investigation would be commenced at a tavern in Topeka and that it was specifically directed at the defendant. After being shown mug shots of the defendant, Mauck and Metz went to the tavern at approximately 10:00 p.m., ordered a beer, and waited to see if they would be solicited by a prostitute. They observed the defendant in the tavern in the company of several females. On cross-examination, Metz admitted that he and Mauck were not solicited by defendant or by any of the women with him for the purpose of prostitution. After defendant left the tavern, a woman, who was the operator of the tavern, placed a business card bearing the defendant's name on the officers' table. This card

advertised that defendant Dodson ran a booking agency and provided all kinds of entertainment. It was elicited from the police officers on cross-examination that the woman who placed this card on the table was the same person who earlier complained to the police concerning the promotion of prostitution in the tavern.

After remaining at the tavern for some time without receiving solicitations, Mauck and Metz left the tavern and drove to a motel near downtown Topeka where a room had been rented for their use prior to the start of the investigation. From this motel room they made several telephone calls to the numbers listed on defendant's business card. Mauck made a call to the business number on the card and was told that no one by the name of Ricky Dodson was at that number. Metz then dialed the residence number listed on the card at approximately 11:30 p.m. and was told that Mr. Dodson was not at home. Metz testified he dialed this number again approximately fifteen minutes later and was again told the defendant was not at home. Metz left a message for defendant to call the officers' motel room and ask for Doug.

Receiving no return on his call by 1:00 a.m., Metz again dialed the residence number and this time succeeded in talking to the defendant. According to Metz, they talked about defendant's business card and his "providing all kinds of entertainment." Metz asked defendant "if he could do us any good." Defendant gave his address to Metz and stated, "I have girls but you'll have to come out here." According to Metz, defendant also said, "It will cost you between $45 and $55." Metz asked defendant to send the girls out to their motel. Dodson replied he was having a party and said, "If you want some action, you'll have to come out here and be here in about 20 minutes."

Metz further testified he called the defendant again after a few minutes and requested that he send the girls to another motel which was located closer to defendant's apartment. Metz asked the defendant to get a room there and they would meet him and pay for the room. According to Metz, defendant replied:

". . . I have six Goddam girls here at my apartment. I pay over $200 per month rent for an apartment, and I'm not going to send them to a Goddam motel. If you want some pussy, you'll have to come to my apartment."

The defendant took the stand in his own behalf and denied most of the testimony of the state's witnesses as to statements

made by him. He specifically denied quoting a price of from $45.00 to $55.00. According to defendant's version of the conversation, the caller said they wanted girls to dance for a bachelor party and asked to have them sent to their motel room. Defendant testified he refused to send the girls to the motel and quoted a figure of $5.00 an hour for dancing clothed and $7.00 an hour if the girls danced topless.

Shortly after these telephone conversations Mauck and Metz, accompanied by Detectives Killian and Hogan, drove to the defendant's apartment. Hogan told Mauck and Metz to go inside and that after ten minutes he would come in the door. The officers arrived at the apartment at approximately 1:45 a.m. and Mauck and Metz knocked on the door. A female voice said, "Just a moment," but no one responded to the knock for some time and the officers heard noises which, they testified, resembled those made when a shotgun is being loaded. The officers started to return to their car, but stopped when the defendant came out of the building and yelled at them. Metz stated defendant told him he had the right apartment and pointed to a girl on the steps of the building, explaining that this was one of his girls. Metz and Mauck returned to the apartment. Metz went to the back bedroom with the defendant to talk, leaving Mauck in the front room in the company of five or six girls. In the back bedroom the defendant questioned Metz and demanded identification from him, stating that the girls were a little bit nervous as they did not know whether the two men were "cops." Metz and Mauck admitted on cross-examination that neither of them was propositioned for purposes of prostitution while they were in the apartment. After Metz and Mauck had been in the apartment for about ten minutes Detectives Hogan and Killian entered and defendant was arrested.

The complaint filed against defendant charged promoting prostitution in violation of K.S.A. 21-3513 in that defendant:

". . . did participate in the maintenance of a house of prostitution, located at 5200 West 20th Street Terrace, Apt. No. 201 or solicit a patron; to-wit: Officer Metz, of the Topeka Police Department, for a prostitute, . . ."

After hearing the evidence, the trial judge found defendant guilty of the offense of promoting prostitution, as defined in the statute and this appeal followed.

Defendant specifies two points of error on appeal. He first

contends the trial court erred in allowing the prosecutor, Mr. Thomas D. Haney, to cross-examine him regarding his assertion of the Fifth Amendment privilege against self-incrimination while testifying as a witness in a prior unrelated trial. The testimony of defendant, on cross-examination, leading up to the claimed error is reproduced in the record as follows:

"Q. Have you ever taken the witness stand and lied about anything before?
"A. No, sir.
"Q. Never?
"A. Not to my knowledge, no, sir.
"Q. You've been a witness before in - - - (interrupted)
"A. Pardon?
"Q. You've been a witness before in different things.
"A. I guess I have.
"Q. And you've never told anything but the complete truth all those times?
"A. I never what now?
"Q. You've told the truth at all times?
"A. Yeah, to the best of my understanding, yes.
"Q. *Have you ever taken the Fifth Amendment on the witness stand about something you might have said?*
"A. Yes, I have.
"Q. During a murder trial?
"A. Yes, I have.
"Mr. Haney: That's all.
"A. On advice of my attorney."
(Emphasis supplied.)

In his brief on appeal, defendant concedes no objection was lodged at trial nor was the matter called to the trial court's attention on motion for a new trial. Nevertheless, defendant now says the error was so plain that the entire case was tainted and, thus, a reversal is required. In support of his position defendant relies on *Doyle v. Ohio,* 426 U. S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; and *State v. Mims,* 220 Kan. 726, 556 P. 2d 387. Defendant also points out that K. S. A. 60-425 grants an absolute privilege to a witness not to testify about any matter which might incriminate him and that K. S. A. 60-439 forbids any comment with respect to the exercise of a valid privilege.

*Doyle v. Ohio,* supra, held that the use for impeachment purposes of the silence of an accused at the time of arrest and after receiving the *Miranda* warning was a violation of due process under the Fourteenth Amendment to the Constitution of the United States. In *Mims* we acceded to the holding in *Doyle,* specifically overruled our previous holdings regarding the use of silence for impeachment purposes, but found harmless error

under the circumstances shown. Our decision in *Mims* was followed by *State v. Heath,* 222 Kan. 50, 563 P. 2d 418, wherein we applied the rule of *Doyle* and *Mims* to a situation where the prosecutor injected post-arrest silence on cross-examination of defendant and then commented on it in closing argument. In *Heath* we rejected the state's argument that we apply the harmless error rule and reversed the conviction.

In the case at bar, the state responds to defendant's arguments by asserting the question is not before us, in the absence of any objection, because of our contemporaneous objection rule (K.S.A. 60-404). The underlying rationale of our contemporaneous objection rule and the practical necessity of the application thereof in the termination of litigation has been recognized and the rule applied in many appeals coming to this court. (See, *State v. Wilson,* 221 Kan. 92, 558 P. 2d 141; *State v. Carter,* 220 Kan. 16, 551 P. 2d 821; and *Baker v. State,* 204 Kan. 607, 464 P. 2d 212, and the many cases cited therein.) However, we are reluctant to apply the rule in the instant case. The record discloses that the trial herein took place on June 17, 1976—the day the decision in *Doyle* was announced. *Mims* and *Heath* were decided long after the instant trial. Neither the prosecution nor the defense had notice of the abrupt change in the law at the time of trial. In *Heath* we noted the United States Supreme Court had not passed on the question of retroactive-prospective operation of the new rule declared in *Doyle.* We declined to declare prospective operation of the rule under the circumstances shown to exist in *Heath* where an objection was made to the prosecutor's comment in closing argument. We also note that an objection was contemporaneously lodged in *Doyle* and that counsel immediately moved for a mistrial when the improper question was put to defendant in *Mims.* Even though *Doyle, Mims* and *Heath* are distinguishable from the case at bar in the respect mentioned above, we do not rely on application of its contemporaneous objection rule alone in disposing of the question presented.

An examination of the entire record in the case at bar reveals that the improper question and the answer elicited were quite insignificant in the context of the evidence as a whole. As we have previously indicated, the defendant testified to an entirely different version of his conversations with Metz. The critical issue in the case was whose testimony should be believed. The cir-

cumstantial evidence of times, places and surroundings, and the testimony of other officers, added considerable credence to the testimony of Officer Metz. It is not surprising that the trial judge chose to believe Metz rather than defendant. We have concluded from an independent examination of the entire record that the prosecutor's improper question was so inconsequential as to amount to harmless error beyond a reasonable doubt.

We think it worthy of mention in connection with our application of the harmless error rule that this was a trial to the court rather than to a jury. Concerning application of the harmless error rule, Judge Gard (Gard, Kansas Code of Civil Procedure Annotated, Sec. 60-261) says:

"Where the trial is to the judge without a jury the rule is less difficult of application because of the collateral considerations which bear on the problem. For instance there is no presumption that the trial judge considered evidence improperly admitted. He is presumed to have considered only what was proper. . . ." (p. 280.)

For his second point on appeal, defendant contends the evidence is insufficient to support a conviction. Defendant takes the position that a conviction cannot be had on a simple offer of services by a middle man as "pimp." Defendant argues the proof must go further and show the actual existence of a prostitute and some overt act by that prostitute. Defendant further argues that under the statute (K.S.A. 21-3513[1][c]) the existence of a prostitute or a house of prostitution must be proved by the state and that such proof must further show some overt act or offer by the female herself.

We, of course, must view the evidence in the light most favorable to the state, the prevailing party below. It must also be borne in mind that on appellate review of a criminal case the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form a basis for a reasonable inference of guilt. (*State v. Duncan,* 221 Kan. 714, 562 P. 2d 84; and *State v. Wilson,* 220 Kan. 341, 552 P. 2d 931.) The credibility of witnesses will not be passed upon and conflicting evidence will not be weighed on appellate review. This court looks only to the evidence which supports the verdict and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. (*State v. Duncan,* supra; *State v. McCollum,* 211 Kan. 631, 507 P. 2d 196; and *State v. Griffin,* 210 Kan. 729, 504 P. 2d 150.)

K.S.A. 21-3513 is a broad, umbrella-type statute. It defines the offense of promoting prostitution in the alternative as any one of eight different items of particular conduct which would constitute the offense. As previously indicated defendant was charged with participating in the maintenance of a house of prostitution under 21-3513 (1) (*a*) or soliciting a patron for a prostitute under 21-3513 (1) (*e*). Any competent evidence as to either alternative requires our affirmance of the conviction.

Metz's testimony of the statements made by defendant taken together with the presence of the five or six girls in defendant's apartment in the context of other surrounding circumstances is evidence in support of the trial court's findings with respect to either of the alternatives. It is ordinarily a question of fact whether the acts and words of the defendant, viewed in the light of surrounding circumstances, constitute solicitation of prostitution. (*Curran v. United States,* [Mun. App. D. C.] 52 A. 2d 121.) Precise statutory language is not necessary where an offer is implicit in the words and actions of a defendant. (*Williams v. State,* 254 Ind. 4, 256 N. E. 2d 913.) Under similar statutes, courts of other jurisdictions have generally held that no overt act is required to complete the offense of solicitation. (*Pauline v. Lee,* [Fla. App. 1961] 147 So. 2d 359; *Marcus v. City of Birmingham,* 41 Ala. App. 477, 136 So. 2d 920, *cert. den.* 273 Ala. 711, 136 So. 2d 923; and *Government of Virgin Islands v. Rodrigues,* [3rd Cir. 1970] 423 F. 2d 9.) In *State v. Green,* 192 Kan. 451, 388 P. 2d 657, defendant was charged with procuring a female for the purpose of prostitution in violation of G.S. 1949, 21-937, a forerunner of K.S.A. 21-3513. The principal issue in *Green* concerned the sufficiency of corroborative testimony, but defendant also claimed there was no evidence introduced to show the subject woman engaged in prostitution. Even though the evidence disclosed an arrest was made before any overt act evincing prostitution took place, this court, in rejecting the defendant's contentions, said:

". . . A review of the record discloses there was ample evidence, not only parol and written but also circumstantial, to sustain the conviction on both counts. . . ." (p. 454.)

It is not fatal to the state's case that defendant did not state the girls were available for prostitution or sexual intercourse. The

word "pussy" as used by defendant to describe the contemplated activity is denominated vulgar slang in Webster's Third International Dictionary (Unabridged), p. 1849, and defined as meaning inter alia "sexual intercourse." In a prosecution for offering acts of sexual intercourse and sodomy for hire under an Indiana Statute (Ind. Ann. Stat. Sec. 10-4220 [1969 Supp.], now Burns Indiana Statutes Annotated, Sec. 35-30-1-1) in *Williams v. State,* supra, wherein the Indiana Supreme Court was confronted with the meaning of vulgar slang used as in the case at bar, Chief Justice Hunter speaking for the court said:

". . . The offer was implicit in appellant's words and actions when taken in the context in which they occurred. As was said in *Burton v. State* (1952), 232 Ind. 246, 111 N. E. 2d 892, this court should not be ignorant as judges of what we know as men." (p. 6.)

We find the judgment of the trial court is sustained by sufficient evidence.

The judgment is affirmed.