THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT G. DeBARTOLO, Defendant-Appellant.

Second District   No. 2—91—0410

Opinion filed March 5, 1993.

Patrick A. Tuite and Ronald D. Menaker, both of Law Offices of Patrick A. Tuite, Ltd., of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

On November 12, 1990, defendant, Robert G. DeBartolo, was charged with prostitution for agreeing to perform an act of lewd fondling upon an undercover police officer for the sum of $50 on August 9, 1990. The offense is initially treated as a Class A misdemeanor. (See Ill. Rev. Stat. 1989, ch. 38, par. 11—14.) Following a bench trial, the trial court found defendant guilty, sentenced him to two years' probation subject to 30 days' confinement in the county jail

at the end of the probation period, and fined him $500. Defendant's post-trial motion was denied on April 11, 1991, and this timely appeal followed.

We affirm the judgment of the circuit court.

On appeal, defendant argues that (1) it was error for the trial court to deny his motion for a directed finding at the close of the State's case because the State failed to prove beyond a reasonable doubt that defendant agreed to perform a sexual act upon another for money; and (2), alternatively, the evidence was insufficient for the court to find him guilty of prostitution beyond a reasonable doubt as to these same elements of the offense.

At trial, Officer Judith Zydowski of the Chicago police department testified for the State. She had been in law enforcement for 18 years and for the past four years assigned to the vice control section of her division. On August 9, 1990, at 10 a.m., she responded to an advertisement in a Chicago area newspaper which stated that a massage was available for women from a man for sore, tense areas.

She called the telephone number and heard a message from an answering machine. Zydowski left a message. Approximately 20 minutes later, she received a call from a male, whose voice she believed was the same as in the message, who asked if she had called. She responded that she had seen the ad in the newspaper and was interested in getting a massage. The man told her that the massage was a full body massage which lasted an hour and cost $50 cash. Zydowski asked if he were available at 1 p.m. that afternoon, and he replied that he was. She asked him at that point if there would be any "release." Over objection, she opined, based on her experience investigating prostitution, that this term in the massage business customarily meant "masturbation." When asked what his response was, she testified: "He said, yes, sure. But he was not going to discuss it over the phone with me. And I said fine. I understood."

At approximately 1 p.m. that afternoon, with backup support, Zydowski went alone into the tanning salon at 13 West Main Street and asked the counter clerk for Gregg as she had been directed on the telephone. The clerk told her to go to the back of the facility, which had four or five tanning salon spaces, a whirlpool and a back office. In the back office, she met defendant, whom she identified in open court. She asked if he were Gregg and he said yes. She identified herself as Kelly McCormick. He first showed her the hot tub area and said she could use the hot tub before the massage. She said that area had framed pictures of people engaging in sexual intercourse. She said she

was not interested in the hot tub, but was interested in the massage. He said "fine."

Zydowski told him she hoped she had not offended him by asking for "release" on the phone. He said he was concerned that she was with the police. She said she was very tense and "the only way that I could come was through masturbation." He again inquired if she were the police and stated, "Do you have a star?" She had a coin purse with her and opened it up. There was a panic button inside it which she could beep if she got into trouble. She showed it to him, and he said it was a beeper; if she were a police officer he did not want to "talk sex" with her.

Zydowski said she was not a police officer and did not want sex, but she wanted to be masturbated. He then told her to get up on the table and that they would have some fun. He stated that it would be $50 and she could pay him later. Zydowski pushed her panic alarm, but the backup officers were delayed by a train which ran through Main Street. She said she was a police officer and defendant was under arrest; he became verbally abusive. Her backup arrived along with a detective from the Bensenville police department and placed defendant under arrest.

On cross-examination, Zydowski was asked if, in response to the ad, she called this tanning salon in Bensenville, Illinois. She could not say that the telephone number was listed for the tanning salon, but, in response to the message, a return call was made by an individual with a husky voice. After ascertaining that a massage was available and would cost $50, she asked about the possibility of getting a "release." The man said he preferred not to talk about this over the telephone. He agreed that she could come over at 1 p.m. and instructed her to ask for Gregg.

During cross-examination, Zydowski agreed that she then proceeded from her office, where she was monitoring these telephone calls, to the Bensenville area. After entering the premises, it was defendant who showed her the facilities. She denied that, after telling defendant that she did not want to use the hot tub, defendant told her to get comfortable. She began to but did not take off her clothes or strip down to her brassiere and panties. Defense counsel asked her whether she said, "Will you—does this—include in this massage a release?" She replied, "No. I asked him if he would masturbate me." She acknowledged that she told defendant, "I am very tense and I would like to come, and the only way that I can come is through massage that includes masturbation." After stating his concern that she might be a police officer, defendant said, "I don't want to discuss sex

with the police." She then said she was not the police and did not want sex.

Defense counsel inquired further:

"Q. Now, after DeBartolo supposedly says hop up and we will have some fun. You then said to DeBartolo, well, what is it going to cost me now, isn't that right, madam?

A. Yes.

Q. And DeBartolo said that it will cost you the same thing, 50 bucks, just like I told you before, isn't that right?

A. Yes, sir.

Q. And then DeBartolo said you can pay me later, isn't that right?

A. Yes."

Zydowski acknowledged that it was not defendant that became abusive, but it was the clerk who did so. Because of the delay in the arrival of her backup, Zydowski waited in the front of the tanning salon. Defendant asked to make a telephone call. On his return he told her that he had called the Bensenville police. She also testified that her backup also called the Bensenville police, but did not know if defendant's officer showed up before hers.

On redirect examination, Zydowski said that the voice she heard on the telephone and on the answering machine was the same as that of the person who offered to masturbate her.

The State rested. Defendant moved for a directed finding and argued essentially that there was no agreement for money as to the sexual favor because the terms of the massage were agreed to before there was any discussion of the sexual favor. Analyzing the facts in terms of contract law, the trial court was of the opinion that there was no complete agreement until both persons had agreed on the price and the services to be performed. The court did not believe that there was an agreement first and then an additional gratuitous (sexual) service was to be performed. The court believed that both on the telephone and at the tanning salon the witness requested the sexual act to be included within the massage for $50. The court denied defendant's motion.

Defendant testified that he was the owner of a restaurant and two tanning salons. One was a tanning salon called Main Street Beach in Bensenville, Illinois, which provided services including body wrap, sculptured nails, massage, hot tub and sauna. Defendant acknowledged that he advertised in the local newspapers. He received a telephone call on August 9, 1990, at 10:30 a.m. He was monitoring calls received on his answering machine on the premises. The outgoing re-

corded greeting on the machine was a prerecorded message that was purchased from Radio Shack. He called back and talked to a person named Kelly. She asked if she could come in for a massage, and he agreed. He told her the price was $50. She asked for directions to get to the salon and said she would be there at 1 p.m. Defendant denied that anything was said over the telephone regarding the possibility of a "release." The woman did not ask what the massage included. He told her that it was a Swedish type of body massage using nongreasy lotions.

Defendant had two employees who gave massages. One was a man and one was a woman. He told Kelly that he only had a woman that afternoon, but she wanted a man. He agreed to an appointment for her and told her to ask for Gregg. Defendant's son worked in the front and acted as manager. The rear area was equipped with tanning rooms and a hot tub room; there was a massage table on the side of the office wall. That afternoon, Gregg, his male masseur, could not be reached, so defendant was going to perform the massage himself.

Kelly was dressed in shorts and a top. After defendant showed Kelly the hot tub and said she could use it, he told her to make herself comfortable and wrap a towel around herself. She said she did not have time for the hot tub. While she was changing, he left saying he would return in a few minutes. After about four minutes, he returned to the massage table. The woman, who was standing, had stripped down to her panties and brassiere. At this time, the woman said, "[W]ill this include release?" He replied, "I am sorry. We do not get involved in sex." She then got dressed and said that she wished she had known this because she would not have come that far. She said that the only way that she could come was by massage. He replied that he could only give her a massage.

Defendant denied suggesting that he would masturbate or fondle her. She went to the front of the store and waited for her two backups. Defendant thought she had left. When she said that he was being arrested for prostitution, he called the Bensenville police department because he could not understand why Chicago set up this situation. Officer Harrison of the Bensenville police, whom defendant had asked for, arrived.

On cross-examination, defendant denied that the woman had asked him over the telephone for a "release." He acknowledged that he knew that "release" meant masturbation when she asked for this at the salon. Defendant had never met Zydowski before and stated that, to his knowledge, there were no prior bad feelings between him and the officer. He denied any agreement to masturbate her.

The State offered no rebuttal evidence and stood on the prior testimony.

The applicable criminal statute states:

"Prostitution. (a) Any person who performs, offers or agrees to perform any act of sexual penetration as defined in Section 12—12 of this Code for money, or any touching or fondling of the sex organs of one person by another person, for money or anything of value, for the purpose of sexual arousal or gratification commits an act of prostitution." Ill. Rev. Stat. 1989, ch. 38, par. 11—14(a).

Defense counsel argued that the court could not find defendant guilty beyond a reasonable doubt because the price of the massage had first been established at $50, and, even when the officer asked for the sexual favor, the price remained at $50. Therefore, defendant argued that there was no agreement to exchange money or value for the sexual act.

The court observed that the agreement was not complete until the type of service, *including the sexual act*, was established for the price stated and that defendant agreed to perform this service both on the telephone and at the salon. The court noted that it would have to accept one version of the events over the other and found no reason to disregard the officer's testimony. Based on the credibility of the witnesses and the probability of what occurred, the court found that the evidence sustained the charge.

■ On appeal, defendant similarly argues that the judgment must be reversed because the State failed to adduce sufficient evidence to prove beyond a reasonable doubt that defendant agreed to perform a sexual act for money. We disregard the question of defendant's motion for a directed finding because it is waived; defendant failed to renew his motion after the close of all the evidence (see *People v. Hominick* (1988), 177 Ill. App. 3d 18) and has not argued this standard in his brief. Thus, we will consider only his second issue and examine the sufficiency of the evidence under the usual reasonable doubt standard. We believe that, because of its unique facts, this case presents an issue of first impression in this jurisdiction.

Throughout a criminal trial, the State has the burden of proving beyond a reasonable doubt all of the material and essential elements constituting the crime. (*People v. Bartlett* (1988), 175 Ill. App. 3d 686, 690.) In a bench trial, it is for the trial judge to determine the credibility of the witnesses, to weigh the evidence, and to draw reasonable inferences therefrom and resolve any conflicts in the evidence. (*People v. Slim* (1989), 127 Ill. 2d 302, 307.) A reviewing court will only set

aside a criminal conviction when the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) The relevant question is whether, after viewing *all* of the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Phillips* (1989), 127 Ill. 2d 499, 510.) The reasonable doubt standard applies in all criminal cases, whether the evidence is direct or circumstantial. *People v. Turner* (1990), 193 Ill. App. 3d 152, 157, citing *People v. Pintos* (1989), 133 Ill. 2d 286, 291.

The question before the court is whether the trial court could find beyond a reasonable doubt that defendant agreed *to perform a sexual act for money*. Defendant argues that at most the evidence shows that the act was gratuitous if defendant agreed to give a massage for $50 but then agreed to include a sexual "release" without additional monetary consideration. Neither defendant nor this court has found an Illinois case precisely on point. Defendant argues that *Roper v. State* (Tex. Crim. App. 1983), 652 S.W.2d 398, is persuasive on this issue. *Roper* is part of a line of Texas cases whose analysis is helpful to our exposition of the issue.

In *Roper,* two officers entered a "studio" and were told that they could have contact sessions or no-contact sessions. The officers paid $70 cash as payment for both officers for contact sessions. Officer Chisholm asked Roper what was allowed. The defendant replied that Chisholm could rub her anywhere but between the legs. Chisholm placed his hand on Roper's leg, and she began to massage his chest and back. She also allowed him to place his hand on her breast, and then he began massaging her breast and her vagina. The defendant then massaged his penis. After a few minutes, a voice announced that the 30-minute session was ended. Similar activities took place between another female defendant and the other officer.

Although the officers paid a total of $70 for the two contact sessions, the reviewing court declined to interpret this as payment for sexual conduct. The court concluded that the officers were paying for a massage and there was no evidence that either defendant negotiated a price for her sexual favors. The court found the evidence insufficient to show that defendants engaged in sexual conduct for a fee. Compare *Trippell v. State* (Tex. Crim. App. 1976), 535 S.W.2d 178 (court questioned sufficiency of evidence (but reversed on a different ground), where complaining witness paid $20 for a massage and only after massage had begun did witness ask for a "local" massage and

defendant masturbated him to a climax; court found it difficult to characterize act as prostitution).

In *Austin v. State* (Tex. Crim. App. 1990), 794 S.W.2d 408, the reviewing court questioned the continued viability of *Roper* and *Trippell*, noted that neither applied a standard of review to determine the sufficiency of the evidence, and found these cases distinguishable. Under the Texas prostitution statute, the offense is committed when (1) a person (2) knowingly (3) offers or agrees to engage in sexual conduct (4) in return for a fee payable to the actor. (*Austin*, 794 S.W.2d at 411; Tex. Penal Code Ann. §43.02(a)(1) (West 1989).) There, undercover officer Hutto entered a massage parlor and was told to select one of the females. Hutto selected defendant, and she led him to a room where there was a sign listing the prices for "Basic Body Rub" and "Swedish Deep Muscle Rub." The defendant explained that the basic rub was a fingertip massage and the Swedish Deep Muscle Rub was a more thorough and stimulating rub. The highest cost of the former was $60 for 60 minutes and the highest cost of the latter was $130 for 60 minutes.

Hutto, an experienced police officer, was allowed to testify that a Swedish Deep Muscle Rub was a catch phrase for prostitution. Hutto gave the defendant $140 for the highest price "Swedish" rub, and defendant returned with his change of $10. After both disrobed, the nude defendant lay facedown on the bed and asked Hutto to massage her back, which he did for 10 minutes. Then she massaged Hutto on his back, legs, and buttocks for 10 minutes. She then asked Hutto if he would "like to end the session." He pretended not to understand, protesting that he had been there only 20 minutes when he had paid for an hour. She repeated her inquiry. Hutto then asked if they ended the session whether he could "get more than just a rub." The defendant said yes, and Hutto asked whether he needed to pay her more money or give a tip. The defendant replied: "No, it's all taken care of." He asked what he could get, and she gave him two choices of sexual acts. Because of her response, Hutto's understanding was that either of the sexual acts was included in the $130. The defendant then agreed to engage in sexual intercourse.

The defendant argued that the evidence did not show that she agreed to engage in sexual intercourse for a fee. She contended that the $130 session ended before she agreed to the sexual conduct and that she was no longer being compensated for her personal services, and she made no effort to obtain (additional) compensation for any sexual activity. The State argued that the evidence showed that Hutto agreed to end the 20-minute session only after he determined from

the defendant that he could get "more than a rub," that it was "all taken care of," and that the parties had agreed to sexual intercourse. Applying the reasonable doubt standard of review, the court sustained the conviction.

Implicit from the *Austin* majority's conclusion is that the sexual act was covered by the original fee. The *Austin* court noted that there was no requirement under the statute for the defendant to negotiate a (separate) price for the act or for any money to exchange hands. However, in his dissent, Justice Powers urged that the evidence was not sufficient to show beyond a reasonable doubt that Austin knowingly agreed to sexual intercourse for a fee. The fee was paid initially and nominally for a massage, and there was no initial agreement for conduct on the part of Austin that was explicitly sexual. The dissenting justice characterized "Swedish Deep Muscle Rub" as ambiguous at best and would not make the inferential connection between the payment of the initial fee and the agreement to have sexual relations. Justice Powers believed *Trippell* and *Roper* were of precedential value and believed that these decisions stood for the proposition that, where a stated price is paid or agreed upon in exchange for services that are not explicitly sexual in nature, such as a massage or a contact session, some additional fee must be paid, agreed upon or negotiated in order to render any subsequent agreement for sexual services prostitution engaged in for a fee. The dissent pointed out that the sexual conduct in which Austin had agreed to engage was to be performed after the session ended. The dissent opined that the statement "it's all taken care," might have meant simply that defendant's agreement for sexual relations was gratuitous.

In the case at bar, the State characterizes as disingenuous defendant's contention that it was the massage that cost $50 and the masturbation was to be gratuitous. The State posits that the officer made it clear that masturbation was what she had approached defendant for, not an ordinary massage. The State likens the present case to *S & F Corp. v. Bilandic* (1978), 62 Ill. App. 3d 193, a municipal license revocation case using a different standard of proof. In *S & F*, it was clear that charging customers $144.90 for a bottle of nonalcoholic cherry frappe was a subterfuge to disguise acts of prostitution since the payment of the fee was followed by offers of sexual acts. It is evident from common knowledge that a soft drink does not command such a price. There is no need to resort to a case of artifice here. We do not find *S & F* readily applicable as there is no clear evidence here that the massage was merely a subterfuge for offers of sexual favors for money.

■ Instead, the legal analysis in this case rests more properly on what was agreed to between the officer and defendant in exchange for the stated $50 fee. The trial court chose to believe the officer's version of events over that of defendant, and we will respect its determination of credibility. The complaining officer testified that when she called, the man she identified as defendant told her that the massage was a full body massage that lasted one hour and cost $50. Defendant told her he was available at 1 p.m. However, she sought to clarify what was included in the massage by asking him if there would be any "release." According to her testimony, he replied "yes, sure" but he would not discuss the matter further over the telephone. Both Zydowski and defendant testified that "release" meant masturbation, and there is no ambiguity regarding the term's meaning between the parties.

When Zydowski arrived at the salon, she again stated clearly that she wanted a sexual "release" through masturbation. The salon contained pictures of couples engaging in sexual intercourse apparently making the ambiance conducive to such activity. Although defendant expressed his concern that she might be a police officer, he nevertheless told her to get up on the table and they would "have some fun." She could pay him the $50 later.

On cross-examination, she again explained that she asked defendant if he would masturbate her. She said that she was tense, that she would like to "come," and the only way that she could "come" was through massage that included masturbation. After this request, defendant stated that the price was $50.

We believe that, from the totality of the circumstances, the trial court could reasonably infer that the masturbation was included in the $50 price. The officer's counterproposal was accepted by defendant. In response to the officer's query on two occasions, first on the telephone and then at the salon, by his words and conduct in the context of the surrounding circumstances, defendant implicitly assented to a sexual act for a sum of money. (See *People v. Johnson* (1978), 60 Ill. App. 3d 183, 191; see also *State v. Bennett* (Minn. 1977), 258 N.W.2d 895, 897.) Defendant's agreement to the officer's request was manifested by his saying "yes, sure" when she asked over the telephone if there would be a "release." After a similar request at the salon, he responded by telling her to get on the table where they would "have some fun" and that she could pay him the $50 later.

While the prostitution statute prohibits a person from offering or agreeing to an act of sexual conduct for money for the purpose of sexual arousal or gratification, the statute does not require a com-

pleted act of sexual conduct. Because it proscribes activity that may be described as inchoate, the statute is likely to be applied to conduct that is to some degree ambiguous. See *Bennett*, 258 N.W.2d at 897.

There are two competing principles present in this type of situation. First, to prevent circumvention of the statute, the offer or agreement need not be express or in the language of the statute, but may be implied from the words and actions of the defendant taken in context. Second, in this type of situation, the danger exists that the defendant's offer or agreement may be innocent or ambiguous. (See *Bennett*, 258 N.W.2d at 897.) Of course, the overriding standard to be applied is that, to sustain the conviction, the evidence must demonstrate beyond a reasonable doubt that defendant's intent was to engage in an act of sexual conduct for money. We think the evidence is sufficient here, although the State's case could have been better developed.

Viewing all the evidence in the light most favorable to the State, we believe that the trial court, as the trier of fact, could properly find beyond a reasonable doubt that defendant agreed to engage in sexual conduct for money and that it was understood between the parties after negotiations that the $50 price included masturbation. This is so despite defendant's attempts to agree to the officer's proposition discretely or even tacitly.

We do not view the agreement here as a separate, after-the-fact agreement to provide sexual favors gratuitously following the performance of a legitimate service. The facts in this case are even more conducive to a finding of guilt than those considered by the majority in *Austin* because, here, the undercover officer did initially "negotiate" a sexual "release" as part of the price of the massage. It was not necessary to allocate a specific amount of the total fee to the sexual aspect of the transaction.

Based on the particular facts of this case, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

UNVERZAGT and QUETSCH, JJ., concur.