STATE of Iowa, Appellee,

v.

MARY GAYE SCHMIDT, Appellant.

No. 97–1810.

Supreme Court of Iowa.

Dec. 23, 1998.

Robert J. Phelps, Davenport, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, William E. Davis, County Attorney, and Robert Cusack, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, SNELL, and CADY, JJ.

PER CURIAM.

The defendant, Mary Gaye Schmidt, challenges her conviction for prostitution, in violation of Iowa Code section 725.1 (1995). She argues there is insufficient evidence she made an offer for the sale of her services as a partner in a sex act or accepted such an offer. Additionally, she asserts the State must prove there was an affirmative agreement to sustain a conviction for prostitution. We reject her arguments and affirm the judgment and sentence imposed by the district court.

## I. Background Facts and Proceedings.

On May 12, 1997, John Hutcheson, an undercover officer in the vice unit, was working in downtown Davenport. Hutcheson stopped his vehicle at an intersection, and Schmidt approached him. According to the evidence presented at trial, including an audio tape of the conversation between Hutcheson and Schmidt, the following events unfolded.

As Schmidt approached the vehicle, Hutcheson yelled, "What is going on?" Schmidt replied, "It's not." She then asked if he was the police, and he stated he was not. Schmidt then tried to open the passen-

ger car door, which was locked. Hutcheson unlocked the door, and Schmidt got in the car. She told Hutcheson that, if he was a police officer, he should take her to jail. Hutcheson again told her he was not a police officer. Hutcheson told Schmidt he was looking for a little fun. Schmidt asked what kind of fun, and Hutcheson stated, "I don't know. Depends what I can get." Schmidt responded, "Talk to me." Hutcheson then inquired about how much oral sex would cost, and she replied, "Tell me how much you want to spend and we'll know where we stand." Hutcheson then said, "About $30." Schmidt responded, "$40 and we could have a really good time." Hutcheson then asked what she meant by that statement, and she said that he would have a really nice time. Schmidt then changed the subject. Eventually, Hutcheson asked her if he could have oral sex and sexual intercourse for the forty dollars. Schmidt told him she would not talk about specifics, but reiterated that he could have a really nice time. Hutcheson responded, "Okay." Schmidt then gave him directions to "a real secluded spot." After noticing they were being followed, Schmidt asked Hutcheson again if he was a police officer and told him to stop and get a drink at a bar. Soon thereafter they were pulled over by the other officers, and Schmidt was arrested for prostitution.[1]

Following a bench trial, the court ruled the State satisfied its burden of proving prostitution based upon its observations, common sense, experience, and judgment of Hutcheson's credibility. It concluded the conversation between Schmidt and Hutcheson culminated in an agreement that for forty dollars Schmidt would show him "a really good time." Based upon the circumstances and the tone of the conversation, the court found the defendant guilty of prostitution. The court sentenced Schmidt to an indeterminate two-year prison term.

## II. Issues on Appeal.

Schmidt argues she did not offer or agree to be a partner in a sex act for money.

Essentially, she contends her words were too ambiguous to constitute an offer, and she never accepted Hutcheson's offer. Additionally, she urges us to adopt as an element of the offense of prostitution that there be evidence of an affirmative agreement to sustain a conviction.

The State argues Schmidt is playing a game of semantics. Based upon the entire conversation, it contends a reasonable fact finder could conclude Schmidt was offering her sexual services for forty dollars. Additionally, the State argues section 725.1 does not require there be an affirmative agreement, only an offer, and urges us not to read such a requirement into the statute.

## III. Is There Substantial Evidence of an Offer?

Before turning to the issues raised, we note "[i]nferences and presumptions are a staple of our adversary system of fact-finding." *State v. Simpson,* 528 N.W.2d 627, 632 (Iowa 1995) (quoting *Ulster County Ct. v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777, 791 (1979)). The jury or fact finder may consider all of the evidence and derive any reasonable inferences therefrom. *See id.* at 632–33. Circumstantial and direct evidence is equally probative. *See* Iowa R.App. P. 14(f)(16); *State v. Boley,* 456 N.W.2d 674, 679 (Iowa 1990).

Additionally, a district court's finding of guilt is binding upon us unless there is not substantial evidence to support the finding. *State v. Abbas,* 561 N.W.2d 72, 74 (Iowa 1997). In reviewing challenges to the sufficiency of evidence, we view the evidence in the light most favorable to the State. *Id.* We will give consideration to all the evidence, not just the evidence supporting the verdict. *Id.* Evidence is substantial if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

With these general principles to guide us, we now consider Schmidt's arguments.

Schmidt asserts she did not make an offer of sex for money to Hutcheson or,

---

1. Schmidt was also charged with and convicted of possession of methamphetamine. She does not challenge that conviction on appeal.

alternatively, she did not accept his offer to pay her for sex. For the following reasons, we conclude a reasonable fact finder could easily conclude she made an offer to sell her services for money.

Iowa Code section 725.1 provides:

A person who sells or *offers for sale* the person's services as a partner in a sex act, or who purchases or offers to purchase such services, commits an aggravated misdemeanor.

(Emphasis added.)

The key inquiry is whether Schmidt made *an offer* for the sale of her services as a partner in a sex act. She wishes us to view her statements in isolation, arguing her words do not constitute an offer because she made no reference to a specific sexual act but only stated they could have a really good or really nice time. Other jurisdictions, however, have concluded that an individual need not utter any "magical" words to constitute an offer: "[A]n offer need not be explicit, but may be implied by the defendant's words and actions." *State v. Oanes,* 543 N.W.2d 658, 662 (Minn.Ct.App.1996); *see also People v. DeBartolo,* 242 Ill.App.3d 811, 182 Ill.Dec. 707, 610 N.E.2d 131, 138 (Ill.App.1993) (the offer or agreement may be implied from the words and actions of the defendant taken in context); *Williams v. State,* 254 Ind. 4, 256 N.E.2d 913, 913–14 (Ind.1970) (offer was implicit in appellant's words and actions taken in context); *State v. Dodson,* 222 Kan. 519, 565 P.2d 291, 295–96 (Kan.1977) (offer can be implicit from defendant's words and actions to sustain conviction for promoting prostitution); *City of St. Louis v. Long,* 395 S.W.2d 481, 483 (Mo.Ct.App.1965) (promise or agreement to engage in sexual intercourse need not be in any particular form of words).

We disagree with Schmidt's assertion that she did not make an offer. Her conduct and statements when taken in context support the trial court's conclusion that she made an offer to sell her services. Schmidt got into a stranger's vehicle, repeatedly asked him if he was a police officer, prompted him to talk to her after he told her he was looking for a little fun, asked him how much he was willing to spend for fellatio, made an offer for forty dollars that was accepted by the officer, and gave him directions to a secluded place. Based upon this evidence, a reasonable fact finder could easily conclude Schmidt made an offer for the sale of her services.

Concededly, Schmidt was very careful not to talk about any specifics; however, her responses taken in context with Hutcheson's inquiries show that her intentions were not innocent or ambiguous. Her statement—that for forty dollars they could have a really good time—was in response to Hutcheson's direct and explicit proposition. The totality of the circumstances indicate Schmidt made an offer to sell her services. To require any "magic words" or the utterance of the word "offer" would permit the circumvention of section 725.1 and dilute its purpose of prohibiting the commercial exploitation of sexual gratification. *See State v. Foster,* 356 N.W.2d 548, 550 (Iowa 1984).

In this case, common sense, the context of the statements, and the totality of the circumstances revealed to the trial court that Schmidt was offering her services for hire. We agree and affirm Schmidt's conviction on this ground.

### IV. Is an Affirmative Agreement an Element of the Offense?

As an alternative argument, Schmidt contends the State should be required to prove an affirmative agreement existed to sustain a conviction for prostitution.

As previously stated, section 725.1 prohibits a person from "sell[ing] or offer[ing] for sale the person's services as a partner in a sex act." Iowa Code § 725.1. Nowhere in the statute do the words "agree" or "agreement" appear.

The power to define a crime lies with the legislature. *State v. Durgin,* 328 N.W.2d 507, 509 (Iowa 1983). "The ultimate goal in interpreting statutory language is to ascertain and give effect to the intention of the legislature." *Foster,* 356 N.W.2d at 550. When a statute's terms are unambiguous and its meaning is plain, this court will not second-guess legislative intent. *See State v. Bond,* 493 N.W.2d 826, 828 (Iowa 1992). Statutory words should be given their ordi-

nary meaning unless it is clear that a different meaning was intended or such a construction would defeat the manifest intent of the legislature. *Id.*

Schmidt is essentially requesting that this court legislate an additional requirement to the offense of prostitution—that there be an affirmative agreement between the parties. This evinces more than what the legislature has defined. "Agree" is defined as "to indicate willingness: CONSENT." Webster's Third New Int'l Dictionary 43 (1976). "Offer" is defined as "to present for acceptance or rejection: hold out: TENDER, PROFFER." *Id.* at 1566. These terms are not synonymous and would defeat the clear intent of the legislature to criminalize only an offer or a sale.

[13] Accordingly, we reject Schmidt's argument that the State must prove there was an affirmative agreement to prevail on a prostitution charge. The legislature clearly could have included such a requirement, but did not.

## V. Disposition.

We find there is sufficient evidence to support Schmidt's conviction for prostitution. Additionally, we conclude an affirmative agreement is not an element of prostitution. Therefore, we affirm the judgment and sentence imposed against her.

**AFFIRMED.**