## GLOVER *v.* STATE OF INDIANA.

[No. 22,300. Filed April 25, 1913.]

1. SODOMY.—*Affidavit.—Requisites and Sufficiency.—Language of Statute.*—There has always existed, by reason of the vile and degrading nature of the crime of sodomy, an exception to the strict rules of criminal pleading with reference to charging that crime, so that notwithstanding the general rule that a charge couched merely in the language of the statute, where the statute declares the offense in generic terms only, is insufficient, and the provision of §2040 Burns 1908, Acts 1905 p. 584, §169, that an indictment or affidavit must contain a statement of the facts constituting the offense charged, an affidavit charging sodomy need not aver the facts constituting the crime, but is sufficient if it follows the language of the statute, §2374 Burns 1908, Acts 1905 p. 584, §473. p. 460.

2. CRIMINAL LAW.—*Statutes.—Declaration of Offenses in Generic Terms.—Determination of Acts Constituting Offense.*—When a public offense has been declared by statute in the generic terms of the common law, without more particular definition, the courts will resort to the common law for the particular acts constituting the offense. p. 463.

3. SODOMY.—*Definition.*—The crime of sodomy, defined by §2374 Burns 1908, Acts 1905 p. 584, §473, includes the offense of copulation with the pathic *per os* as well as *per anum.* p. 463.

From Howard Circuit Court; *William C. Purdum,* Judge.

Prosecution by the State of Indiana against Otho Glover. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Blacklidge, Wolf & Barnes,* for appellant.

*Thomas M. Honan,* Attorney-General, and *Thomas H. Branaman,* for the State.

Cox, J.—As the result of a trial by the court, without the intervention of a jury, appellant was adjudged guilty of sodomy and was sentenced to an indeterminate term of imprisonment in the State prison of not less than 2 nor more than 14 years and to pay a fine of $100. Appellant was without means to employ counsel and the trial court appointed

members of the bar of high standing to defend him, to the end that he should have a fair and lawful trial. The questions involved in the case are questions of law, and not of fact, and have never been determined by this court. It is with a commendable desire to have the ultimate judicial tribunal of this State, constituted for that purpose, declare the law of the State on the questions involved, and thereby determine whether appellant was lawfully convicted, that counsel, who are serving without compensation, present this appeal for their client.

A motion to quash that count of the affidavit on which the conviction rests was made on the statutory grounds that the facts stated therein do not constitute a public offense, and that they are not stated with sufficient certainty. This motion was overruled and this ruling presents the first claim of error. Omitting the formal parts beginning and closing it, the count of the affidavit in question reads as follows: "Lawrence D. Stevens being first duly sworn according to law deposeth and saith that on or about the 19th day of August, 1912, at the County of Howard and State of Indiana, Otho Glover did then and there unlawfully and feloniously commit the abominable and detestable crime against nature with one (here the name of the pathic is given) and who was then and there a boy eleven years of age. Wherefore affiant says that said defendant, Otho Glover, is guilty of the crime of sodomy." It is earnestly contended by counsel that this charge of the commission of crime does not satisfy the requirements of our statute which provides that an indictment or affidavit must contain a statement of the facts constituting the offense in plain and concise language without unnecessary repetition. Acts 1905 p. 584, §169, §2040 Burns 1908. The crime intended to be charged by the affidavit is defined by §2374 Burns 1908, Acts 1905 p. 584, §473, which reads as follows: "Whoever commits the abominable and detestable crime against nature with mankind or beast; or whoever entices, allures, instigates or

aids any person under the age of twenty-one years to commit masturbation or self-pollution, shall be deemed guilty of sodomy, and, on conviction, shall be fined not less than one hundred dollars nor more than one thousand dollars, to which may be added imprisonment in the state prison not less than two years nor more than fourteen years.''

It is quite obvious that the affidavit shows an intent to charge appellant with sodomy by the commission of the abominable and detestable crime against nature with mankind as defined in the above section and not by the commission of either of the other base acts which by the terms of the section also constitute the crime of sodomy. The charge is made in the language of the statute which has long been deemed to be sufficient, as a general rule, in charging the commission of a statutory offense. It is, however, contended by counsel for appellant that this process of committing the crime of sodomy as defined by our statute is not an offense which may be so pleaded, and is not within the general rule, but comes within an exception to it which requires nicer certainty in the charge. It is true that where an offense is defined by the statute in generic terms, without naming the particular acts constituting it, it has been held, as an exception to the general rule, that it is not sufficient to charge it in the language of the definition but the particular acts must be stated which constitute the offense denounced. *Johns* v. *State* (1902), 159 Ind. 413, 415, 65 N. E. 287, 59 L. R. A. 789; *State* v. *Patton* (1902), 159 Ind. 248, 250, 64 N. E. 850; *State* v. *Metsker* (1908), 169 Ind. 555, 83 N. E. 241; *State* v. *Bridgewater* (1908), 171 Ind. 1, 85 N. E. 715. But by reason of the vile and degrading nature of this crime

1.  it has always been an exception to the strict rules requiring great particularity and nice certainty in criminal pleading, both at common law and where crimes are wholly statutory. It has never been the usual practice to describe the particular manner or the details of the commission of the act and where the offense is statutory a statement

of it in the language of the statute, or so plainly that its nature may be easily understood, is all that is required. Coké, 3 Inst. 59; 12 Coke's Rep. 37; 2 Chitty, Crim. Law 50; Crown Cir. Comp. 86; 4 Blackstone, Comm. 215, 216; 20 Ency. Pl. and Pr. 274; 36 Cyc. 503; 1 Wharton, Crim. Law (11th ed.) §760; *People* v. *Williams* (1881), 59 Cal. 397; *Davis* v. *State* (1810), 3 Har. & J. (Md.) 154; *Lambertson* v. *People* (1861), 5 Parker's Cr. R. (N. Y.) 200; *Commonwealth* v. *Dill* (1894), 160 Mass. 536, 36 N. E. 472; *State* v. *Romans* (1899), 21 Wash. 284, 57 Pac. 819; *Bradford* v. *State* (1893), 104 Ala. 68, 16 South. 107, 53 Am. St. 24; *State* v. *Williams* (1882), 34 La. Ann. 87; *Honselman* v. *People* (1897), 168 Ill. 172, 48 N. E. 304; *Kelley* v. *People* (1901), 192 Ill. 119, 61 N. E. 425, 85 Am. St. 323; *State* v. *Whitmarsh* (1910), 26 S. Dak. 426, 128 N. W. 580. Blackstone defines the crime of sodomy as the infamous crime against nature and does not more fully particularize the acts which constitute it but says: "I will not act so disagreeable a part, to my readers as well as to myself, as to dwell any longer upon the subject, the very mention of which is a disgrace to human nature. It will be more eligible to imitate in this respect the delicacy of our English law, which treats it in its very indictments, as a crime not fit to be named" (4 Blackstone, Comm. 216). Reason, decency and precedent, we think, unite in justifying the conclusion that the court did not err in overruling appellant's motion to quash the affidavit.

The second claim of error on the part of the trial court is founded on the overruling of appellant's motion for a new trial the causes for which are that the finding of the court is contrary to law and not sustained by sufficient evidence. The evidence shows clearly and without contradiction that the crime was committed by appellant as charged if it may be committed on the pathic *per os*. The able counsel for appellant contend that the offense, though statutory, is not so particularly defined as to exhibit the acts constituting it and that therefore we must resort to the common law to

ascertain what these acts are and that we are required to exclude every act not included in the offense at common law. *State* v. *Berdetta* (1880), 73 Ind. 185, 38 Am. Rep. 117; *Ledgerwood* v. *State* (1893), 134 Ind. 81, 89, 33 N. E. 631; *Woodworth* v. *State* (1896), 145 Ind. 276, 279, 43 N. E. 933; *State* v. *Patton, supra; Sopher* v. *State* (1907), 169 Ind. 177, 181, 81 N. E. 913, 14 L. R. A. (N. S.) 172, 14 Ann. Cas. 27. These cases and numerous others have firmly fixed as a rule in this state that when a public offense has been declared by statute in the generic terms of the common law, without more particular definition, and provided punishment therefor, the courts will resort to the common law for the particular acts constituting the offense.

It is contended by counsel that at common law the crime in question could be committed with mankind only *per anum* and that the act shown in this case was never included in the common law offense and is not, therefore, within the statute. Counsel concede the very obvious fact that the act here involved is within the mischief and the reason of the statute, but not being within the words of the statute or, it is claimed, of the offense as it was known at common law, the rule of strict construction of penal statutes it is urged requires its exclusion from the anathema and penalty of the statute. *Sherrick* v. *State* (1906), 167 Ind. 345, 354, 79 N. E. 193.

There can be no doubt of the soundness of the general rule that penal statutes are to reach no further in meaning than the fair and plain import of their words and that acts within the mischief and reason but not within the letter are to be excluded. But the crime of sodomy has always been deemed a very pariah of crimes and the acts constituting it but seldom specifically defined. There can be no doubt that many of the definitions are amply broad to include the act in question. The earliest mention of it in the laws of England may be found in 2 Rotuli Parl. 50 Edward III, No. 58 (1376) p. 332 where it appears that a complaint was made

that the Lombards had brought into the realm a shameful vice, not to be named, which complaint was accompanied by the suggestion that it should be punished for the safety of the realm. The vice was not more particularly described. The statute of 25 Henry VIII made the "detestable and abominable vice of buggery committed with mankind or beast" a felony punishable by death, but the felony was not otherwise described. Statutes at Large, 1483-1539, p. 267. Coke defines the crime as "a detestable and abominable sin, amongst christians not to be named, committed by carnal knowledge against the ordinance of the Creator, and order of nature, by mankind with mankind, or with brute beast, or by womankind with brute beast." Coke, 3 Inst. 58. The same definition is found in 1 Burns, Justice of the Peace 528. Hawkins tells us that "all unnatural carnal copulations, whether with man or beast, seem to come under the notion of sodomy, which was felony by the ancient common law, and punished, according to some authors, with burning; according to others, with burying alive." 1 Hawk. P. C. (8th ed.) 357. In Bacon's Abridgment the definition is "an unnatural copulation between two human creatures, or between a human and a brute creature." 9 Bacon, Abridgment 158. See, also, 1 Jacob, Law Dict. 375. As we have seen, the definition given by Blackstone is similar to and fully as general as that in our statute upon which the conviction of appellant rests. More modern definitions are equally as broad as many of the ancient ones. Russell on Crimes gives it as, "peccatum illud horribile inter christianos non nominandum," (that horrible crime not to be named among christians), without further particularity. And this is clearly merely the ancient definition. 1 Russell, Crimes (7th Eng. ed.) 975. In 2 Bishop, New Crim. Law §1191, the definition is given as "a carnal copulation by human beings with each other against nature, or with a beast." See, also, Anderson, Law Dict. In 36 Cyc. 501, it is defined as follows: "Sodomy, in its broadest meaning, is the carnal copulation by human

beings with each other against nature, or with a beast, in which sense it includes the crime against nature, bestiality and buggery.   In its narrower sense sodomy is the carnal copulation between two male human beings *per anum.*''  See, also, *Ausman* v. *Veal* (1858), 10 Ind. 355, 71 Am. Dec. 331. · Modern lexicographers unite in giving the word sodomy a broad and comprehensive definition as is shown by the definition in the Century Dictionary which is given as ''unnatural sexual relations, as between persons of the same sex or with beasts.''

The original authority for the statement found in textbooks and some American cases that the act involved in this case is not within the common-law definition of the crime, is the case of *Rex* v. *Jacobs* (1817), 1 Rus. & Ry. 331.   The report of the case is exceedingly short and gives no reason for the conclusion reached.   It, alone, has led a number of text-books on criminal law to make the statement that ''to constitute the offense the act must be in that part where sodomy is usually committed.''  9 Bacon, Abridgment 160; 1 Russell, Crimes, (7th Eng. ed.) 976.   This very statement, however, is a concession that the offense is sometimes, if more rarely, committed in other ways and justifies the broader and more comprehensive common-law definitions which we have set out.   The case of *Rex* v. *Jacobs, supra,* stands alone in England on the question and no other expression of the courts of that country can be found to limit the broader definitions of the offense given by the great writers on the common law.   In view of this fact we think we are left free to conclude that our legislature, when it passed the act of 1905, §2374 Burns 1908, *supra,* chose rather the broad definition of the crime, which would include those abominations within the mischief of the law, rather than the narrow one which without reason would exclude from punishment a perpetrator of what might well be considered the vilest and most degenerate of all the acts within

the inclusion of the broad definition. The correctness of this conclusion is made clear by the fact that by the last clause of §2374, *supra*, the act of enticing, alluring, instigating or aiding any person under the age of twenty-one to commit masturbation or self-pollution is also made the crime of sodomy. This was never within the broadest definition of sodomy at common law. It is inconceivable that the legislature denounced and provided severely condign punishment for this unnatural sexual practice and that of penetration *per anum* and left the vilest and, if possible, most unnatural one to go undenounced and unpunished. A part of the history of the definition of the crime of sodomy in this State adds further support to the conclusion reached. Section 100 of the criminal code of 1881 (Acts 1881 p. 174, §2005 R. S. 1881), contained the provision that whoever "being a male, carnally knows any man or any woman through the anus" shall be guilty of sodomy. The change would seem to indicate that the legislature meant the broad definition of the "abominable and detestable crime against nature" to be included in our statutory definition of sodomy unrestricted by the decision in *Rex* v. *Jacobs, supra*.

The decisions in this country on the question are not harmonious. The courts of a number of states have, some of them apparently with little consideration, followed the case of *Rex* v. *Jacobs, supra*. See *Prindle* v. *State* (1893), 31 Tex. Cr. R. 551, 21 S. W. 360, 37 Am. St. 833; *People* v. *Boyle* (1897), 116 Cal. 658, 48 Pac. 800; *Commonwealth* v. *Poindexter* (1909), 133 Ky. 720, 118 S. W. 943; *Kinnan* v. *State* (1910), 86 Neb. 234, 125 N. W. 594, 27 L. R. A. (N. S.) 478 and note, 21 Ann. Cas. 335 and note. The conclusion we have reached in this case is in harmony with a number of well-reasoned cases in other states. *Herring* v. *State* (1904), 119 Ga. 711, 46 S. E. 876; *White* v. *State* (1911), 136 Ga. 158, 71 S. E. 135; *Honselman* v. *People* (1897), 168 Ill. 172, 48 N. E. 304; *Kelley* v. *People, supra; State* v. *Whitmarch, supra*. See,

also, *Means* v. *State* (1910), 125 Wis. 650, 104 N. W. 815; *State* v. *Vicknair* (1900), 52 La. Ann. 1922, 28 South. 273.

In the well-considered case of *State* v. *Whitmarsh, supra,* in commenting on the reason given by certain writers on criminal law for the decision in *Rex* v. *Jacobs, supra,* that, "to constitute this offense, the act must be in that part where sodomy is usually committed," it is said: "The mere statement of the above reason shows the unsoundness of such a distinction. It concedes that the act is sometimes committed in some other part, and, by conceding that the act committed in such other part is not the usual offense, the statement concedes that the act, if committed in such other part, would be still more unnatural, because if not more unnatural, it would not be more unusual. Certainly this unusual act is many times more 'detestable and abominable' than that made criminal at common law. As was well said by the court in *State* v. *Vicknair,* 52 La. Ann. 1921, 28 South. 273: 'But why in the common law courts the use of the mouth should not have been considered as much against nature as though the act were committed *per anum* is incomprehensible.' "

The judgment is affirmed.

NOTE.—Reported in 101 N. E. 629. Reported and annotated in 45 L. R. A. (N. S.) 473. See, also, under (2) 12 Cyc. 141.