WILLIAMS *v.* STATE OF INDIANA.

[No. 569S103. Filed April 13, 1970. Rehearing denied June 4, 1970.]

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General and *Murray West,* Deputy Attorney General for appellee.

HUNTER, C.J.—Appellant was charged by affidavit in two counts with having offered to commit for hire acts of sexual intercourse and sodomy. Trial before the court resulted in a finding of guilty and sentence on both counts to the Indiana

Women's Prison for not less than two nor more than five years.

It is appellant's sole contention that the evidence is insufficient to uphold the conviction. A review of the evidence most favorable to the appellee discloses the following: the chief prosecuting witness, one Fred Cipriani, a police officer assigned to the vice squad, saw appellant and four other female subjects standing on the corner of the second hundred block of East Twenty-Fourth Street. Cipriani had stopped in his car for a stop sign when he was approached by one Diane Hamilton who asked if he wanted "to party." Upon inquiry as to the type of party, Miss Hamilton indicated that for ten dollars she would indulge in a "half and half." Cipriani was then asked if he wanted a "two-girl party" at which time Miss Hamilton called appellant to the car. Upon learning of the offer and purported acceptance by Officer Cipriani, appellant took the parties to her house on North Talbott. On the way to the house appellant informed Cipriani that he need not worry about the police as they had not yet discovered the fact that she was using the place for such "parties." Once inside the house Miss Hamilton began undressing but appellant refused to do so until she received the ten dollars agreed upon. Cipriani asked her what the money was for, to which she responded that it was for the same thing Miss Hamilton said she would do. At this point both women were placed under arrest.

As noted, appellant's only challenge to the conviction is that the evidence was insufficient. More particularly, appellant asserts that there was no offer on her part to commit acts of sexual intercourse or sodomy. Such an offer, however, can clearly be implied from her actions in conjunction with those of Miss Hamilton. Appellant and Miss Hamilton appeared to be loitering on a street corner. Miss Hamilton approached Cipriani and asked him if he wanted "to party" and that it would cost ten dollars for a "half and half." Upon the agreement of Cipriani, appellant came along to afford a "two-girl

party." She told Cipriani that for her ten dollars she would do the same thing that Miss Hamilton had offered to do.

A "half and half" is defined in Wentworth and Flexner, Dictionary of American Slang 688 (1967) as follows:

"half-and-half [taboo] n. Fellatio followed by conventional sexual intercourse. *Orig. prostitute's use.*"

Webster's Third New Unabridged Dictionary (1961) defines fellatio as "the practice of obtaining sexual satisfaction by oral stimulation of the penis." Such has been held to be sodomy. *Glover* v. *State* (1913), 179 Ind. 459, 101 N. E. 629; *Estes* v. *Estes* (1964), 244 Ind. 691, 195 N. E. 2d 471.

The evidence and all reasonable inferences to be drawn therefrom clearly shows that appellant offered to commit acts of sexual intercourse and sodomy. Surely it can not be said that to constitute a violation of the statute (Ind. Ann. Stat § 10-4220 (1969 Supp.)), the offer must be express and in precise statutory language. The offer was implicit in appellant's words and actions when taken in the context in which they occurred. As was said in *Burton* v. *State* (1952), 232 Ind. 246, 111 N. E. 2d 892, this court should not be ignorant as judges of what we know as men.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn and Givan, JJ., concur; Jackson, J., dissents with opinion in which DeBruler, J., concurs with opinion.

### DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion herein and dissent thereto.

Appellant was charged by affidavit in two counts with having offered to commit for hire acts of sexual intercourse and

sodomy. This prosecution was instituted pursuant to Burns' Statute § 10-4220 (1969 Supp.), which reads as follows, to-wit:

"10-4220. Prostitute.—Any female who frequents or lives in a house or houses of ill fame, knowing the same to be a house of ill fame, or who commits or offers to commit one ▆ or more acts of sexual intercourse or sodomy for hire, shall be deemed guilty of prostitution, and on conviction thereof shall either be fined not less than one hundred dollars [$100] nor more than five hundred dollars [$500]; and imprisonment not to exceed 180 days or such person may be imprisoned in the Indiana women's prison not less than two ▆ years nor more than five [5] years. [Acts 1965, ch. 345, § 1, p. 1025; 1967, Ch. 23, § 1, p. 28.]"

The affidavit charging the offense in pertinent part reads as follows:

"BE IT REMEMBERED, That, on this day before me, NOBLE R. PEARCY Prosecuting Attorney of the Nineteenth Judicial Circuit, personally came FRED CIPRIANI who, being duly sworn, upon his oath says that JOSEPHINE WILLIAMS on or about the 15th day of SEPTEMBER, A.D. 1967, at and in the County of Marion in the State of Indiana, then and there being a female, did then and there unlawfully and feloniously offer to commit an act of sexual intercourse for hire with one FRED CIPRIANI, a male person, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

/s/ Fred Cipriani

(COUNT TWO).

The affiant aforesaid, upon his oath aforesaid, further says that JOSEPHINE WILLIAMS, on or about the 15th day of SEPTEMBER, A.D., 1967, at and in the County of Marion and the State of Indiana, then and there being a female, did then and there unlawfully and feloniously offer to commit an act of sodomy for hire with one FRED CIPRIANI, a male human being, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana.

/s/ Fred Cipriani

Subscribed and sworn to before me, this 18th day of DE-CEMBER, A.D. 1967.

/s/ Noble R. Pearcy
Prosecuting Attorney
Nineteenth Judicial Circuit."

This case was tried to the Court without the intervention of a jury on a plea of not guilty, on January 31, 1969. At the conclusion of the trial the court made the following finding:

"At this time I find, as to Count One I find the defendant guilty as charged, as to Count Two I find the defendant guilty as charged. I order precommitment investigation in accordance with statute and set this matter for pronouncement of judgment Thursday, January the thirteenth, or February the thirteenth at 1:30 p.m. All right, that's all."

Thereafter the court entered the following judgment:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendant be and hereby is, sentenced to the Indiana State Women's Prison for not less than Two (2) nor more than Five (5) years and Costs as to Count I and sentenced to Two (2) to Five (5) years on Count II."

The defendant by counsel filed Motion for New Trial.

The evidence of the prosecuting witness in this case in question and answer form appears at pages 22 to 27 inclusive of the transcript, and reads as follows:

*THE COURT:* All right all persons knowing themselves to be witnesses herein will stand and raise their right hands.
(Witnesses stood and raised their right hands.)

*THE COURT:* Do you, and each of you, solemnly swear that the evidence you are about to give will be the truth, the whole truth, and nothing but the truth, so help you God?
(Witnesses responded audibly indicating in the affirmative.)

*THE COURT:* All right, be seated, please. The State will call its first witness.

*MR. COHEN:* The State calls Sergeant Cipriani.
(Sergeant Cipriani took the witness stand.)

THE STATE OF INDIANA, TO MAINTAIN THE ISSUES IN ITS BEHALF, OFFERED AND INTRODUCED ITS EVIDENCE IN CHIEF AS FOLLOWS, TO-WIT:

*FRED CIPRIANI*, a witness called on behalf of the State of Indiana, first having been duly sworn by the Court, testified as follows, to-wit:

*DIRECT EXAMINATION*
*QUESTIONS BY MR. COHEN*, deputy prosecutor

Q. State your name and occupation.
A. Fred Cipriani, police officer, City of Indianapolis.

Q. Are you a married man, Officer?
A. Yes, I am.

Q. What are your specific duties on the Police Department?
A. I'm assigned to the Executive Branch, the Vice Detail.

Q. And were you so employed on the fifteenth of September, 1967?
A. Yes, I was.

Q. And what was your assignment on that particular day?
A. I was assigned to Vice Unit 131 with Sergeant Gigure and Officer Grant, Sergeant Grant.

Q. Now calling your attention to that date did you have occasion to see Josephine Williams?
A. Yes, sir, I did.

Q. Is she in this courtroom?
A. She is.

Q. Would you point her out for me, please?
A. The young lady sitting right of counsel, Mr. Ward, over there.

*MR. COHEN:* Have the court record show that the witness has pointed to the defendant, Josephine Williams.

Q. Now where did you see the defendant on the fifteenth of September, 1967?
A. Miss Williams and four other female subjects were standing on the corner, the second hundred block of East Twenty-fourth Street.

Q. Now is that in Marion County?
A. Yes, it is.

Q. State of Indiana?
A. Yes, sir.

Q. Now what time of the day or night was this?

A. This was at approximately two ten (2:10) p.m.

Q. And who, if anyone, was with you at that time?

A. I was by myself.

Q. Now where was the defendant when you first saw her?

A. She was standing on the intersection of Talbot and Twenty-fourth Street.

Q. And then what happened, if anything?

A. I was operating the car west in the two hundred block of East Talbot Street. I was stopped at the stop sign preferential street. At this time one of the female subjects approached the car, her name was Diane Hamilton, and Miss Williams was approximately six feet behind her. She asked me if I wanted to party, Miss Hamilton asked me if I wanted to party. I said what kind of party. She said it would cost ten dollars for her to have sexual relationships, for a half and half is the exact words she used. And she asked me if I wanted to go for a two-girl party. I said I guess. And she called Miss Williams to the car, and she made the statement to Miss Williams that this man was willing to go for a two-girl party, at which time they, Miss Williams told us to follow her, that she would take us to her house, which we went to twenty-three forty-nine (2349) North Talbot. As I started back to the address, I hesitated and Miss Williams made the remark that it was okay, that the police didn't know that she was using this place and they had used it previously for parties. We went inside, and Miss Hamilton, Diane Hamilton started undressing, took her slacks down to her ankles. Miss Williams told me that she wanted her money which was agreed on, ten dollars, before she was about to disrobe, at which time I said what was the money for. She said the same thing that Miss Williams said she would do. At which time I did place them both under arrest for prostitution and advised them of their constitutional rights.

Q. Now this last incident occurred in Marion County, State of Indiana, is that correct?

A. It occurred the rear apartment at twenty-three forty-nine (2349) North Talbot.

Q. Now how long did you talk with Josephine Williams?

A. The only conversation was inside the residence at twenty-three forty-nine (2349) North Talbot.

Q. Officer Cipriani, how long have you been on the Vice Squad?

A. Approximately two years.

Q. And have you had, in the course of that assignment have you had occasion to talk to women?

A. Several women.

Q. And what is your opinion as to the sex of this defendant?

A. She is a female in my opinion.

Q. And what is your sex, Officer?

A. Male.

Q. Now who spoke first during your initial conversation with Miss Williams?

A. The initial conversation was originated by Miss Diane Hamilton, at which time she called, this was at the intersection of Twenty-fourth and Talbot, at which time she called Miss Williams over to the car and told Miss Williams that this man was agreeable to a two-girl party and told her the price that Miss Williams—correction Miss Hamilton had told me ten dollars. And then the conversation with Miss Williams occurred at twenty-three forty-nine (2349) North Talbot.

Q. And who spoke first between you and she?

A. She, Miss Hamilton began to undress and Miss Williams said that before she was going to disrobe or undress she wanted the money.

Q. And all the events you have testified to occurred on or about the fifteenth of September, 1967, is that correct?

A. Yes, sir, it did.

MR. COHEN: I have no further questions.

CROSS EXAMINATION

QUESTIONS BY MR. WARD, attorney for Miss Williams.

Q. Do I understand the only conversation you had with Josephine Williams was in the residence?

A. The residence she took us into, yes, sir.

Q. And that is where she said she wanted her money?

A. She said she did want the money and I asked her what for, and she said the same thing that Miss Hamilton was going to give me.

MR. WARD: That's all.

THE COURT: Redirect.

*MR. COHEN:* No further questions of the witness."

Following the testimony of the prosecuting witness is the testimony of Officer Gigure relative to this matter. His testimony appears in transcript pages 29 to 31 inclusive. His testimony may be summarized by saying he had no conversation with appellant on the 15th of September, 1967, and that as far as he knows "Miss Williams is a female."

The State then rested and the defense rested at which time the defense moved for a discharge "For the reason that there has been no testimony by Mr. Cipriani, or also by Sergeant Gigure, that Josephine Williams at any time offered to commit an unlawful act of sexual intercourse or sodomy as covered by the affidavit, it was some other person."

It appears to me that there is a total lack of evidence of probative value to sustain the judgment in this case.

In passing it might be well to take a look at two sections of the Constitution of our State, namely Section 16 which reads as follows:

"Excessive bail, punishment, and penalties.—Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. *All penalties shall be proportioned to the nature of the offense.* (Emphasis supplied)

Section 18 of the Constitution of this State reads as follows:

"Reformation as basis of penal code.—The penal code shall be founded on the principles of reformation, and not of vindictive justice."

We find many instances where crimes of far greater magnitude are punished by considerably lesser imprisonment than that fixed for violation of this particular law.

I am sure Cotton Mather and his fellow witch-hunters will welcome Indiana's joining their blue-nose society.

The judgment herein should be reversed and the cause re-

manded to the trial court with instructions to sustain appellant's motion to dismiss for lack of evidence.

DeBruler, J., concurs with opinion.

## DISSENTING

DEBRULER, J.—I dissent from the majority opinion and concur in Judge Jackson's dissenting opinion. The utterances of this appellant under the circumstances shown are insufficient to support the judgment of the trial court. *Glover* v. *State* (1969), 253 Ind. 121, 20 Ind. Dec. 338, 251 N. E. 2d 814; Acts 1963, ch. 220, § 1, being Burns' Annotated Statute § 60-908.

NOTE.—Reported in 256 N. E. 2d 913.