**Lisa HARWELL, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0402–CR–181.**

Court of Appeals of Indiana.

Oct. 7, 2004.

Publication Ordered Jan. 21, 2005.

Michael E. Caudill, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Joby Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Lisa Harwell (Harwell), appeals her conviction for Count I, prostitution, a Class D felony, Ind.Code § 35–45–4–2.

We affirm.

### ISSUE

Harwell raises one issue on appeal, which we restate as follows: whether the State presented sufficient evidence to sustain her conviction for prostitution.

### FACTS AND PROCEDURAL HISTORY

On September 12, 2003, Officer David Miller (Officer Miller) of the Indianapolis Police Department was investigating prostitution complaints in the College corridor, the area between Washington Street and 38th Street, in Indianapolis, Indiana. His undercover investigation consisted of driving around the area looking for prostitutes. At approximately 2:45 p.m., Officer Miller observed Harwell on the corner of 22nd street and College Avenue. Upon stopping at the side of the road, he inquired if Harwell needed a ride. Without responding, Harwell entered the car and asked Officer Miller if he was a police officer. After denying he was a police officer, Officer Miller asked her if anything was going on, a question he uses to determine if women are looking to commit sexual acts. He further specified he was looking for fellatio. Although Harwell agreed to perform fellatio, she refused to discuss money when he asked about the price. Instead, she directed him towards an alley off the 2100 block of Yandes. When they arrived in the alley, Officer Miller again questioned Harwell about the cost, asking her if the act would be more than $20.00. Harwell simply responded "no." (Transcript p. 5). At that point, Officer Miller informed her that he was a police officer and that she was under arrest.

On November 13, the State filed an information against Harwell, charging her with Count I, prostitution, a Class A misdemeanor. That same day, the State amended the charging information by adding Part II of Count I, prostitution, as a Class D felony, based on Harwell's two prior convictions for the same offense. On January 26, 2004, a bench trial was held. At the close of the evidence, the trial court found Harwell guilty of prostitution, a Class D felony and sentenced her to five hundred and forty-five days of incarceration at the Indiana Department of Correction.

Harwell now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

Harwell contends that the evidence presented at trial was insufficient to support her conviction. Specifically, Harwell argues that the State failed to prove that she offered or agreed to perform a sexual act in exchange for money or other property.

■ Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Cox v. State*, 774 N.E.2d 1025, 1028–29 (Ind.Ct.App.2002). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.

Ct.App.2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier-of-fact. *Cox,* 774 N.E.2d at 1028–29. A judgment will be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind. 2000).

Prostitution as a Class D felony is defined by I.C. § 35–45–4–2 as "[a] person who knowingly or intentionally performed, or offers or agrees to perform, sexual intercourse or deviate sexual conduct ... for money or other property commits prostitution, a Class A misdemeanor. However, the offense is a Class D felony if the person has two (2) prior convictions under this section." Thus, in order to convict Harwell, the State was required to establish beyond a reasonable doubt that (1) she intentionally agreed to perform fellatio in exchange for money and that (2) she had two prior convictions for prostitution.

Although Harwell now concedes that she intended to engage in a sexual act, she disputes that there was an agreement to perform fellatio for money. In particular, she asserts that despite Officer Miller's repeated inquiries about the cost of fellatio, she never indicated that she agreed to accept money. We are not persuaded.

■ As both parties correctly point out, there is no definition of "agreement" within the statute. Furthermore, neither party proffered nor did our research reveal any case law clarifying "agreement" as used in the charge of prostitution. In construing a statute, the primary goal is to determine, give effect to, and implement the intent of the legislature. *Abney v. State,* 811 N.E.2d 415, 419 (Ind.Ct.App. 2004). The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute. *Id.* It is just as important to recognize what the statute does not say as it is to recognize what it does say. *State v. Dugan,* 793 N.E.2d 1034, 1036. In so doing, we consider the object and purpose of the statute, as well as the effects and consequences of such interpretation. *Abney,* 811 N.E.2d at 419.

■ "Agreement" has a plain, and ordinary meaning: it is defined by Black's law dictionary as "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." BLACK'S LAW DICTIONARY 74 (8th ed.2004). Analogizing to contract law, an agreement is considered to be a meeting of the minds between the parties, a mutual understanding of all terms of the contract. *See Bain v. Bd. of Trustees of Starke Memorial Hosp.,* 550 N.E.2d 106, 110 (Ind.Ct.App. 1990), *reh'g denied; Wallem v. CLS Industries, Inc.,* 725 N.E.2d 880, 883 (Ind.Ct. App.2000).

In support of their respective arguments, both Harwell and the State direct us to the same two cases. Although we find these cases instructive, they do not conclusively decide the case at bar. In *Williams v. State,* 254 Ind. 4, 256 N.E.2d 913 (1970), *reh'g denied,* undercover police officers were approached by Williams and her friend. *Id.* Upon coming to an agreement regarding the services and price with Williams' friend, Williams agreed to "do the same thing" her friend offered to do. *Id.* Upon review, our supreme court held that an offer need not be explicit to support a conviction of prostitution. *Id.* at 914. Likewise, in *Andrews v. State,* 155 Ind.App. 599, 293 N.E.2d 799 (1973), Andrews argued that a mere price quotation to perform certain sexual services does not constitute an offer to commit sexual inter-

course for hire. *Id.* at 800. Although we applauded the argument as being novel, we nevertheless found it to be misplaced. *Id.* We held that the evidence from which an offer could be inferred supported Andrews' conviction for prostitution. *Id.*

Here, the record shows that Officer Miller was conducting an undercover investigation in an area known for its high volume of prostitution. Testimonial evidence indicates that immediately after getting into Officer Miller's car, Harwell demanded to know whether he was a police officer. Further, Officer Miller testified that after Harwell agreed to perform fellatio, she was evasive about its cost. However, the record reflects that after directing him to an alley, Officer Miller again attempted to elicit a specific price for Harwell's services. At this point, Officer Miller stated that, upon his question "if it was going to cost more than $20.00," Harwell responded, "no." (Transcript p. 5).

Being mindful that we "should not be ignorant as judges of what we know as men," we find that the State presented sufficient evidence to prove beyond a reasonable doubt that Harwell agreed to perform fellatio for money. *Williams*, 256 N.E.2d at 914 (Ind.1970). Based on the evidence before us, we conclude that the agreement was implicit in the parties' words and actions when considered in the context in which they occurred. By indicating that the sexual service would not be more expensive than $20.00, Harwell emitted an inference that there was a cost involved and that she would accept money.

Moreover, Harwell's argument that a specific price has to be determined between the parties prior to there being a meeting of the minds is not supported by the statutory language of I.C. § 35–45–4–2. Indiana Code section 35–45–4–2 only requires evidence of a performance, offer, or agreement to commit sexual services in exchange for money. The statute is silent as to the requirement of a pre-set price. *See id.* Surely, it cannot be said that to constitute a violation of the statute, the agreement must be expressed and in precise statutory language. *See Williams*, 256 N.E.2d at 914. Therefore, we agree with the trial court that a meeting of the minds existed between Officer Miller and Harwell that she would perform fellatio for money, with a more specific price to be determined somewhere between 1 penny and $20.00, but definitely not more than $20.00. *See Bain*, 550 N.E.2d at 110. Accordingly, we find that there is substantial evidence of probative value to support the judgment of the trial court. *See Williams*, 714 N.E.2d at 672. Consequently, we hold that the State presented sufficient evidence to support Harwell's conviction for prostitution.

### CONCLUSION

Based on the foregoing, we find that the State presented sufficient evidence to sustain Harwell's conviction for prostitution.

Affirmed.

CRONE, J., and VAIDIK, J., concur.

### ORDER

On October 7, 2004, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, has filed a Motion to Publish Memorandum Decision. The Appellee states this Court's opinion satisfies the criteria for publication as follows:

a. The issue in this case turned on the meaning of the term "agreement."

b. The Court acknowledged that neither the criminal statutes nor relevant case law define the word "agreement." Op. at 383. In fact,

there are few published cases in Indiana applying or interpreting the prostitution statute.

c. This court should publish this decision because it provides much needed guidance by establishing or clarifying existing law. Ind.App. Rule 65(A)(1).

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The appellee's Motion to Publish is GRANTED and this Court's opinion heretofore handed down in this cause on October 7, 2004, marked Memorandum Decision, Not for Publication in now Ordered Published.

All Panel Judges concur.