Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Nov 14 2014, 9:30 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

HENRY MORALES,                )
                             )
    Appellant-Defendant,      )
                             )
        vs.             )    No. 49A02-1403-CR-175
                             )
STATE OF INDIANA,            )
                             )
    Appellee-Plaintiff.       )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
Cause No. 49F10-1306-CM-40667

**November 14, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Henry Morales appeals his conviction for class A misdemeanor patronizing a prostitute following a bench trial. The sole issue presented for our review is whether the State presented sufficient evidence to sustain his conviction. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

On June 21, 2013, Detective Tabatha McLemore of the Indianapolis Metropolitan Police Department was working undercover as a prostitute. At approximately 11:30 a.m., Detective McLemore was standing on the corner of 12th Street and Tibbs Avenue. This area is well known by law enforcement as a "high prostitution area." Tr. at 7. Morales was driving a vehicle south on Tibbs Avenue when he observed Detective McLemore and stopped his vehicle in the middle of the street directly in front of her. The windows of Morales's vehicle were down. Morales said "Hey" to Detective McLemore and gave her a head nod. *Id*. at 8. Morales then turned onto 12th Street, drove about twenty feet, and again stopped his vehicle in the middle of the road. There was no traffic light or stop sign where he stopped, and Morales did not park his vehicle. Detective McLemore had learned from her experience posing as a prostitute that "Johns" would "flag [her] down" in this manner. *Id*. at 6. Detective McLemore approached Morales's vehicle and the following exchange occurred:[1]

MORALES: What's up?

---

[1] This exchange was recorded by Detective McLemore and admitted as State's Exhibit 1 at trial.

| | |
|---|---|
| DETECTIVE: | I'm trying to make a little bit of money. |
| MORALES: | How much you want? |
| DETECTIVE: | Twenty (20) for head. |
| MORALES: | Damn, now that stinks. |
| DETECTIVE: | Too much? |
| MORALES: | Yeah, that's too much. |
| DETECTIVE: | How much you got? |
| MORALES: | I want to party but I mean I'm not paying that much for doing my head. |
| DETECTIVE: | Twenty (20) for f**k? |
| MORALES: | Yeah, I'll do that. I have to get that ass for twenty bucks ($20.00) (laughing). |
| DETECTIVE: | Okay, whore. |
| MORALES: | Why don't you just get in the car and we'll f**k in there? |
| DETECTIVE: | You want to f**k me in the ass for twenty (20.00)? |
| MORALES: | No, I didn't say that. |
| DETECTIVE: | I mean I'll f**k you for twenty ($20) but not in the ass. |
| MORALES: | No, why you got to get so rowdy? (sic) |
| DETECTIVE: | Oh, sorry, dude. |
| MORALES: | Damn, so what's the deal? |
| DETECTIVE: | I'll f**k you for twenty ($20.00). |
| MORALES: | Damn! |
| DETECTIVE: | Do you want to go and do it at my place? |
| MORALES: | Where's your place at? |
| DETECTIVE: | Well, uh, we can go in the–see that abandoned house right there? |
| MORALES: | Uh-hum (affirmative response). |
| DETECTIVE: | We can get in the back right there: ain't nobody there, cause I mean it's a vacant house. We can get right there in the back. |
| MORALES: | All right. [Cool].[2] |
| DETECTIVE: | Is that cool? |
| MORALES: | Here comes the cops, the cops are coming to arrest your ass. |
| DETECTIVE: | Then I'll walk this way, f**k that. |

*Id*. at 14-16. Morales was subsequently arrested.

---

[2] Although the transcript of the recording does not reflect that Morales said, "Cool," the parties agreed at trial that he did in fact say that. Tr. at 19, 24, 31.

The State charged Morales with one count of class A misdemeanor patronizing a prostitute. Following a bench trial on February 18, 2014, the trial court found Morales guilty as charged. The trial court imposed a 365-day sentence with 363 days suspended and two days executed. Morales received two days of credit time and was placed on probation for 180 days. This appeal ensued.

**Discussion and Decision**

Morales challenges the sufficiency of the evidence to support his conviction. When reviewing a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the trial court's ruling and will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. (citation omitted). It is not necessary for the evidence to overcome every reasonable hypothesis of innocence. *Id*. The evidence will be deemed sufficient if an inference may reasonably be drawn from it to support the conviction. *Id*.

Indiana Code Section 35-45-4-3 provides in relevant part that a person commits class A misdemeanor patronizing a prostitute if that person "knowingly or intentionally pays, or offers or agrees to pay money or other property to another person … on the understanding that the other person will engage in, sexual intercourse … with the person or with any other

4

person."[3] Morales's sole contention on appeal is that the evidence is insufficient to show that he "agree[d] to pay" for sexual intercourse because there was insufficient evidence that he actually accepted Detective McLemore's offer.  We disagree.

In *Harwell v. State*, 821 N.E.2d 381 (Ind. Ct. App. 2004), we considered the meaning of the term "agreement" in the context of prostitution and stated,

> "Agreement" has a plain and ordinary meaning:  it is defined by Black's law dictionary as "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons."  Analogizing to contract law, an agreement is considered to be a meeting of the minds between the parties, a mutual understanding of all terms of the contract.

*Id*. at 383 (citations omitted).  Thus, in determining whether Morales agreed to pay for sexual intercourse, we must determine whether the evidence is sufficient to establish that he and Detective McLemore had a mutual understanding.  Indeed, we look to whether a mutual understanding was implicit in the parties' words and actions when considered in the context in which they occurred.  *Id*. at 384.

Here, the State presented sufficient evidence that Morales and Detective McLemore had a mutual understanding that Morales had agreed to pay twenty dollars for sexual intercourse.  The recorded exchange indicates that, after a brief discussion, Morales agreed to the twenty-dollar price for sexual intercourse by saying, "Yeah, I'll do that," and "I'll f**k you for twenty…." After rejecting Morales's suggestion that they have sexual intercourse in his car, Detective McLemore suggested that they go to an abandoned house, and Morales

---

[3] Although not applicable to Morales, we note that this statute has since been amended, effective July 1, 2014.

5

responded, "All right. Cool." *Id.* at 16. The parties' words, considered in the context in which they occurred, indicate a clear offer and acceptance, and thus a mutual understanding between the parties.

Morales points to a self-serving interpretation of his words and argues that his response, "All right. Cool," was not intended as an acceptance of Detective McLemore's offer to engage in sexual intercourse. Morales also suggests that Detective McLemore's follow-up response to him of, "Is that cool?" indicates that some sort of additional assent by him was required to establish an agreement. He maintains that he gave no such additional assent and that police "arrived before a deal was made." Appellant's Br. at 8. Morales merely invites us to reweigh the evidence and the reasonable inferences to be drawn therefrom in his favor, which we will not do.

Based upon the evidence presented, the trial court could reasonably infer that Morales and Detective McLemore had a mutual understanding that Morales had agreed to pay twenty dollars for sexual intercourse. This evidence is sufficient to convict Morales of class A misdemeanor patronizing a prostitute.

Affirmed.

NAJAM, J., and BAILEY, J., concur.