# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 07 2016, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lorenzo Montes-Garnica,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 7, 2016<br><br>Court of Appeals Case No.<br>49A05-1603-CR-655<br><br>Appeal from the Marion Superior Court<br><br>The Honorable David Certo, Judge<br><br>The Honorable David Hooper, Magistrate<br><br>Trial Court Cause No.<br>49G12-1407-CM-36556 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Lorenzo Montes-Garnica was convicted of Patronizing a Prostitute, a Class A misdemeanor. On appeal, Montes-Garnica challenges the sufficiency of the evidence supporting his conviction.

[2] We affirm.

## Facts & Procedural History

[3] On the evening of July 23, 2014, Detective Tabatha McLemore of the Indianapolis Metropolitan Police Department (IMPD) was working undercover as a prostitute on a street corner in a high-prostitution area. At approximately 7:30 p.m., Detective McLemore observed Montes-Garnica drive by and stare at her as he passed her location. Montes-Garnica kept driving down the road and then abruptly crossed lanes of traffic, pulled into a parking lot, turned his car around, and returned to Detective McLemore's location. When Montes-Garnica parked his car along the street, Detective McLemore was on the opposite side of the street speaking with a male subject in another car. Montes-Garnica continued to stare at Detective McLemore as she spoke with the other male subject. The other male subject was unwilling to make an agreement with Detective McLemore unless she got into his car, so Detective McLemore withdrew from her conversation with him.

[4] Detective McLemore then walked over to Montes-Garnica's car. As she approached, she observed Montes-Garnica lean across his car and unlock the passenger door. Detective McLemore walked up to the driver's side window, which had previously been rolled down, and asked "What's up?" *State's Exhibit*

2; *see also Transcript* at 15. Montes-Garnica asked Detective McLemore for her name and she responded "Tiffany." *State's Exhibit* 2. He then asked Detective McLemore if she was "doing business," which Detective McLemore knew from her experience was commonly known to mean "prostitution" in the Hispanic community, and she responded affirmatively. *Transcript* at 15; *State's Exhibit* 2. Detective McLemore then asked Montes-Garnica how much money he had, and he stated that he had "20." *Transcript* at 16; *State's Exhibit* 2. Detective McLemore asked Montes-Garnica what he wanted for twenty dollars, and he stated "sex." *Id*. Detective McLemore knew that "sex" was street terminology for "sexual intercourse." *Transcript* at 16. She asked Montes-Garnica again if he wanted "sex" and he said "yes." *Id*.; *State's Exhibit* 2. Detective McLemore then asked Montes-Garnica if he wanted to go to her place, but he indicated that he wanted to go to his place on "New York" Street. *Id*. Detective McLemore then requested that Montes-Garnica meet her in a nearby alley in order to avoid police detection. Immediately thereafter, Detective McLemore walked away from Montes-Garnica's car and police officers arrived in a marked vehicle and placed Montes-Garnica under arrest.

[5] The State charged Montes-Garnica with patronizing a prostitute, a Class A misdemeanor. A bench trial was held on March 3, 2016, at the conclusion of which the trial court found Montes-Garnica guilty as charged. Montes-Garnica now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[6] Montes-Garnica argues that the State presented insufficient evidence to support his conviction for patronizing a prostitute. Specifically, Montes-Garnica argues that the evidence was insufficient to establish that an agreement, i.e., mutual understanding, was ever reached between him and Detective McLemore.

[7] When reviewing a challenge to the sufficiency of the evidence, we do not reweigh evidence or judge the credibility of witnesses. *Duncan v. State*, 23 N.E.3d 805, 812 (Ind. Ct. App. 2014), *trans. denied*. Instead, we consider only the evidence and the reasonable inferences supporting the verdict. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Id*. It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[8] To sustain Montes-Garnica's conviction for patronizing a prostitute, the State's evidence had to prove beyond a reasonable doubt that Montes-Garnica (1) knowingly or intentionally (2) offered to pay or agreed to pay (3) money (4) to Detective McLemore (5) on the understanding that Detective McLemore would engage in sexual intercourse or other sexual conduct with Montes-Garnica. *See* Ind. Code § 35-45-4-3(1). An agreement means "a mutual understanding between two or more persons about their relative rights and duties regarding

past or future performances; a manifestation of mutual assent by two or more persons." *Harwell v. State*, 821 N.E.2d 381, 383 (Ind. Ct. App. 2004).

[9] The State's evidence consisted of Detective McLemore's testimony and a recording of the encounter between Montes-Garnica and Detective McLemore that was captured by a hidden device worn by Detective McLemore during the encounter. In the recording, Detective McLemore gives what Montes-Garnica describes as a "'real time' interpretation" of the "limited sounds" coming from his mouth. *Appellant's Brief* at 7. He notes that there is no evidence showing Detective McLemore's ability to speak or understand Spanish. With that in mind, he urges this court to listen to the recording before deciding the accuracy of Detective McLemore's testimony. Acknowledging that Detective McLemore testified that she was repeating what he was saying, Montes-Garnica asserts that after listening to the recording, "one would be hard pressed to conclusively say what words were being uttered" by him. *Id*. at 10.

[10] Montes-Garnica's argument boils down to a request that this this court reweigh the evidence and judge the credibility of the witnesses. This we will not do.

[11] Detective McLemore testified that she has been involved in over 1000 patronizing a prostitute cases throughout her fourteen-year career with IMPD. Detective McLemore explained how Montes-Garnica stared at her as he drove by her location and that he continued to stare at her using his rearview mirror. Montes-Garnica then purposefully turned his car around and came back and parked his car near where Detective McLemore was positioned. As she

approached, he unlocked his passenger door and willingly engaged in conversation with her.

[12] With regard to the recording of the encounter, Detective McLemore testified that she purposefully repeated Montes-Garnica's words throughout because he was very soft spoken and she wanted to ensure that his words were properly recorded. In addition, she repeatedly testified that Montes-Garnica spoke some English and that she understood everything he said during their exchange. After repeating his words, Detective McLemore gave Montes-Garnica the opportunity to say no or disagree with her statements. Notably, Montes-Garnica never offered any words of protest or disagreement with Detective McLemore's statements.

[13] Next, while we agree that the recording does not clearly capture Montes-Garnica asking whether Detective McLemore is "doing business," we note that it does capture Detective McLemore asking, "Am I doing business? Yes." *State's Exhibit* 2. Finally, the recording clearly captures Montes-Garnica stating in plain English that he will pay "20" for "sex" after Detective McLemore indicated that she was "doing business." *Transcript* at 16; *State's Exhibit* 2. The encounter concluded with Detective McLemore and Montes-Garnica settling on having "sex" at Montes-Garnica's place on New York Street. *Id*.

[14] Detective McLemore testified that "doing business" is synonymous for prostitution in the Hispanic community and that "sex" is a common term used for "sexual intercourse" in patronizing prostitution. *Transcript* at 25, 18. From

this evidence, it is clear that the encounter between Montes-Garnica and Detective McLemore concerned prostitution and involved an exchange of money for sexual intercourse.

[15] The evidence most favorable to the conviction establishes that Montes-Garnica knowingly or intentionally offered to pay or agreed to pay twenty dollars to Detective McLemore for sexual intercourse. This evidence is sufficient to sustain Montes-Garnica's conviction for patronizing a prostitute as a Class A misdemeanor.

[16] Judgment affirmed.

[17] Bradford, J. and Pyle, J., concur.