## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 13 2017, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Ann Johnson
Marion County Public Defender Agency
Indianapolis, Indiana

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Schuyler Stewart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 13, 2017

Court of Appeals Case No.
49A04-1704-CR-727

Appeal from the
Marion Superior Court

The Honorable
Angela Dow Davis, Judge

Trial Court Cause No.
49G16-1609-CM-36538

**Kirsch, Judge.**

[1] Schuyler Stewart ("Stewart") appeals his conviction, following a bench trial, of Class B misdemeanor criminal mischief[1] and asserts that insufficient evidence was presented to convict him.

[2] We affirm.

## Facts and Procedural History

[3] On September 13, 2016, Monique Buford ("Buford") drove her car to the place of Stewart's employment and picked him up. Thereafter, as she drove, the two argued. Buford drove Stewart to his mother's home, and, upon arriving there, told him to get out of the car. He refused. They pushed each other while seated in the car, and then Stewart grabbed her keys and "jammed them up in the ignition and pulled them back out." *Tr. Vol. II* at 28-29. After that, Buford's car would not start.

[4] Indianapolis Metropolitan Police Department Officer Joshua Hasseld ("Officer Hasseld") was dispatched to a location determined to be Buford's father's house, where Officer Hasseld encountered Stewart and Buford, who appeared nervous and upset. After learning that Buford's car was at Stewart's mother's home, Officer Hasseld went to that location, witnessed Buford's father unsuccessfully attempt to start the vehicle and, thereafter, saw the car being

---

[1] *See* Ind. Code § 35-43-1-2(a).

towed from the scene on a wrecker. The next day, Buford's father worked on the car and was able to get it to start.

[5] On September 16, 2016, the State charged Stewart with domestic battery, a Class A misdemeanor; battery, a Class A misdemeanor; and criminal mischief, a Class B misdemeanor. *Appellant's App. Vol. II* at 20-21. The State later dismissed both of the battery charges.

[6] Officer Hasseld testified at the bench trial to the events as described above. The State also sought to have Buford testify, but she failed to appear for trial.[2] Finding her unavailable, the trial court admitted into evidence her prior sworn, recorded statement made while Buford was questioned by attorneys for both parties. In it, she stated that, when she and Stewart were arguing in the car, he took her keys, "jammed them up in the ignition and pulled them back out[,]" and the ignition "locked up and I couldn't move my car, I couldn't turn the key."[3] *Tr. Vol. II* at 28-29. Buford said that Stewart "stormed in the house," and she continued to scream at him to come back outside "cause he messed my car up." *Id*. at 29. Buford explained that she called the police and called a friend, who took her to her father's house. Buford stated that, at the time, she told police that she "just wanted him to pay for the injuries to my car; pay for the tow." *Id*. Buford also stated that she did not have to pay for repair, as her

---

[2] The record before us indicates that Buford was in the courtroom gallery but left prior to trial, although she had been subpoenaed and was subject to an active body attachment at the time. *Tr. Vol. II* at 17.

[3] Buford suspected that Stewart's actions caused the car's anti-theft system to engage.

father was able to get the car to start by disconnecting and reconnecting the battery. She stated, "[A]ll I had to do was pay for the tow to get it from [Stewart's] mom's house to my dad's." *Id*. at 30. Stewart testified, denying that he grabbed her keys and stating, "I never had her keys at all."[4] *Id.* at 34.

[7] The trial court found Stewart guilty of criminal mischief and sentenced him to time served. Stewart now appeals.

## Discussion and Decision

[8] Stewart argues that the State presented insufficient evidence to support his criminal mischief conviction. When reviewing the sufficiency of the evidence, appellate courts neither reweigh the evidence nor determine the credibility of witnesses; that role is reserved for the factfinder. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). We affirm the conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id*.

[9] A person who recklessly, knowingly, or intentionally damages or defaces property of another person without the other person's consent commits criminal mischief, a Class B misdemeanor. Ind. Code § 35-43-1-2(a). Specifically, to

---

[4] Stewart states that "[he] did not testify and did not call any witnesses." *Appellant's Br*. at 6. However, the Transcript reflects that Stewart testified, briefly, stating that Buford was outside of his mother's home and called him, he went out to talk to her, they argued, he went inside, and when he came back out, her car would not start. He denied grabbing the keys or otherwise touching them. *Tr. Vol. II* at 33-34.

convict Stewart as charged, the State was required to prove that he "did . . . recklessly, knowingly damage or deface the property of [Buford], to wit: vehicle ignition[.]" *Appellant's App. Vol. II* at 20. Stewart concedes that Buford's vehicle would not start and needed a tow; his argument is that Buford's car was not damaged because Buford's father was able to get it started by disconnecting the battery, and Buford did not have to pay for any repairs.[5] We disagree with the proposition that her car was not damaged.

[10] Buford stated in her sworn statement that, after Stewart jammed the keys into the ignition and pulled them back out, which Buford believed caused the anti-theft system to engage, she could not start her car or turn her key. Consequently, Buford was required to have the car towed, which she had to pay for. *See Tr. Vol. II* at 29 (Buford stating, "I just wanted [Stewart] to pay for . . . my tow[.]"). Officer Hasseld also observed that the vehicle would not start and that it was towed from the scene.

[11] "A judgment will be sustained based on circumstantial evidence alone if the circumstantial evidence supports a reasonable inference of guilt." *Harwell v. State*, 821 N.E.2d 381, 383 (Ind. Ct. App. 2004). That is, the circumstantial

---

[5] Stewart asserts that his appeal is "directed to the lack of sufficient evidence of any 'damage' cause as a result of his] actions," but he also states that he "does not concede that [he] did *any* criminal act whatsoever." *Appellant's Br.* at 7 (emphasis in original). To the extent that he is claiming that he did not touch the keys or jam them into the ignition, Buford's sworn statement, admitted into evidence, states that Stewart "took [her] keys and jammed them up in the ignition and pulled them back out." *Tr. Vol. II* at 28-29. Any claim to the contrary is a request for us to reweigh the evidence and determine the credibility of witnesses, which we cannot do. *Hitch*, 51 N.E.3d at 226.

evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Gaerte v. State*, 808 N.E.2d 164, 166 (Ind. Ct. App. 2004), *trans. denied*. Here, the facts and inferences in favor of the judgment show that Buford drove her car to Stewart's mother's house, at which time the car was undamaged and operational, but that after Stewart took the keys and shoved them into and pulled them out of the ignition, the car would not start, and it required Buford to have the car towed to her father's home, where he subsequently was able to get it to start after disconnecting and reconnecting the battery. That Buford did not have to pay for a separate repair to the ignition because her father was able to get the car to start does not change the fact that the car was not drivable, *i.e.* damaged, and she had to pay for a tow. The State presented sufficient evidence to support Stewart's conviction for Class B misdemeanor criminal mischief.

[12] Affirmed.

[13] Najam, J., and Brown, J., concur.